UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Thomas Lipczynski,                                    Civ. No. 18-1466 (JNE/BRT)

    Petitioner,

v.                                                    **REPORT AND RECOMMENDATION**

Richard Marques, Warden,

    Respondent.

Thomas Lipczynski, Reg. No. 47595-424, FCI Sandstone, P.O. Box 1000, Sandstone, MN, 55072, *pro se* Petitioner.

Erin M. Secord, Assistant United States Attorney, counsel for Respondent.

BECKY R. THORSON, United States Magistrate Judge.

    In this action under 28 U.S.C. § 2241, Petitioner Thomas Lipczynski alleges that the United States Bureau of Prisons ("BOP") breached the Residential Drug Abuse Program ("RDAP") contract and violated his constitutional rights by expelling him from RDAP. (*See* Doc. No. 1, Habeas Pet.) For the reasons stated below, this Court recommends that the § 2241 petition be denied.

**I.    Background**

    **A.    Petitioner's Conviction and Release Date**

    Petitioner is currently incarcerated at the Federal Correctional Institution in Sandstone, Minnesota ("FCI Sandstone"). (Doc. No. 9, Declaration of Dr. Jessica Lorenzen ("Lorenzen Decl.") ¶ 4, Ex. B.) Petitioner was convicted of Distribution of

Methamphetamine in the United States District Court for the Northern District of Illinois. (*Id.*, Ex. B at 2.) He was sentenced to a thirty-month term of imprisonment, followed by a three-year term of supervised release. (*Id.*) His projected release date is October 18, 2018. (*Id.*)

### B. The BOP's Residential Drug Abuse Program

The Residential Drug Abuse Program ("RDAP") was created by the BOP pursuant to the Congressional mandate in the Violent Crime Control Law Enforcement Act ("VCCLEA") of 1994. Congress directed the BOP to "make available appropriate substance abuse treatment for each prisoner the [BOP] determines has a treatable condition of substance abuse addiction or abuse." 18 U.S.C. § 3621(b). Associated regulations require the inmate to complete and pass a drug abuse education course. 28 C.F.R. § 550.51.

The BOP must provide residential substance abuse treatment for all eligible prisoners, subject to available funding. 18 U.S.C. § 3621(e)(1). A prisoner is "eligible" for RDAP if he is "determined by the [BOP] to have a substance abuse problem," and he is "willing to participate in a residential treatment program." 18 U.S.C. § 3621(e)(5)(B)(i) and (ii). The BOP may, as an incentive for successful completion of RDAP, reduce the inmate's sentence by up to one year. 18 U.S.C. § 3621(e)(2).

RDAP has three phases. 28 C.F.R. § 550.53. The first phase is a unit-based residential component that lasts a minimum of 500 hours over a six to twelve month period and is comprised of a course of individual and group activities provided by drug abuse specialists in a treatment unit set apart from the general prison population. *Id.* Upon

successful completion of the residential component, inmates enter phase two, institution transitional services, where they receive counseling support while transitioning back into the general population at the facility. *Id.* The final component of RDAP is community-based transitional drug abuse treatment ("TDAT") after an inmate transfers to a Residential Reentry Center ("RRC" or "halfway house") or home confinement. *Id.* To successfully complete RDAP, an inmate must finish all three phases. 28 C.F.R. § 550.56(a).

To be admitted into RDAP, an inmate must have a verifiable substance abuse disorder, sign an agreement acknowledging program responsibility, and be able to complete all three phases of RDAP. (Lorenzen Decl. ¶ 5, Ex. A at 24.) Inmates seeking admission must submit a request to a member of the unit team or the institution's Drug Abuse Program Coordinator ("DAPC"). (*Id.*, Ex. A at 27.) If referred for consideration after a preliminary review, inmates will need to complete a psychology intake screening and possibly be referred to the DAPC for an interview. (*Id.*) If there is no verifying documentation to establish a pattern of substance abuse or dependence, a Drug Treatment Specialist ("DTS") will offer the inmate the option to volunteer for the non-residential drug abuse program or to seek documentation from a substance abuse treatment provider. (*Id.*, Ex. A at 28.)

The RDAP unit is reserved solely for RDAP participants, as required by 18 U.S.C. § 3621(e). (Lorenzen Decl. ¶ 6, Ex. A at 26–27.) To live on the RDAP unit, an inmate must be waiting for admission into the program, be participating in the program, or be an RDAP "completer." (*Id.*) All inmates living on the RDAP unit are required to follow the

same rules and decorum as the inmates participating in the residential component of RDAP. (*Id.*)

Inmates may be expelled from RDAP because of disruptive behavior related to the program or unsatisfactory progress in treatment. 28 C.F.R. § 550.53(g); (Lorenzen Decl. ¶ 7, Ex. A at 33). Inmates are usually given a formal warning before removal from RDAP, but an inmate may be removed immediately by DAPC without an intervention if it is determined by the treatment team that the inmate's continued presence on the treatment unit will cause "an immediate and ongoing problem for staff and other inmates." (*Id.*, Ex. A at 33–34.) Inmates will be removed from RDAP immediately if a Discipline Hearing Officer ("DHO") finds they have a committed a prohibited act involving alcohol or drugs, violence or threats of violence, escape or attempted escape, or any 100-level series incident. (*Id.*, Ex. A at 34.)

When an inmate leaves RDAP for reasons other than completion, treatment staff will document the circumstances concerning the discharge in the Psychology Data System ("PDS"). (Lorenzen Decl. ¶ 7, Ex. A at 35.) An inmate who previously declined, withdrew, or failed RDAP may apply for readmission to the program after 90 days. (*Id.*) The treatment team and unit team will decide whether the inmate should be readmitted to RDAP. (*Id.*) If readmitted to RDAP, the inmate will not receive any credit for prior treatment participation. (*Id.*)

        C.      **Petitioner's Expulsion from RDAP**

Petitioner argues that he entered a reciprocal contract that tentatively granted him one year off his release date in return for his successful completion of the RDAP.

4

(Habeas Pet. 4.) Petitioner contends that he successfully performed his obligations pursuant to the contract as of July 18, 2017, and therefore, Respondent is in breach of contract. (*Id.*) The BOP did not share the same view, however, as Petitioner was expelled from RDAP on September 12, 2017. (Lorenzen Decl. ¶ 8, Ex. C at 7.)

On that date, the RDAP Treatment Team met with Petitioner to discuss his progress in RDAP. (*Id.*) Petitioner was expelled from RDAP "[d]ue to repetitive behavioral concerns, including inappropriate behavior during [the September 12, 2017] interaction." (*Id.*) Petitioner had "demonstrated an unwillingness to take on the responsibilities of the community, demonstrate positive behavior in his daily interactions, and appropriately give/receive feedback from others." (*Id.*, Ex. C at 10–11.)

Prior to his expulsion, Petitioner had received a formal warning on March 21, 2017, due to missing a scheduled appointment with staff (referred to as a "call-out"). (*Id.*, Ex. C at 7, 42.) Missing a call-out demonstrated that Petitioner was struggling with responsibility, as he was absent from his institutional assignment at that time, and the absence interrupted the operations of the institution. (*Id.*) Additionally, it was Petitioner's responsibility to be aware of and to uphold the rules/expectations of RDAP and the BOP. (*Id.*) He was offered a Responsibility Check to address this area of concern from a treatment perspective. (*Id.*)

On May 12, 2017, Petitioner received a second formal warning for missing a Progress Review and unacceptable treatment work. (Lorenzen Decl. ¶ 10, Ex. C at 7, 38–39.) Petitioner had been reminded by treatment staff on May 11, 2017, but he failed to attend the appointment the next day. (*Id.*) Petitioner did not follow-up with his primary

5

DTS for missing his Progress Review. (*Id.*) Rather, RDAP staff sought him out to discuss the unexcused absence. (*Id.*) Upon review of his treatment assignments, staff noted that he had completed them at an unacceptable level, which demonstrated he was putting forth minimal effort in treatment. (*Id.*) Plaintiff was unwilling to be specific about his behavior, which demonstrated that he was struggling with changing his attitude. (*Id.*) At this time, Petitioner was a senior member of the RDAP community and failed to demonstrate mastery of phase-related concepts, including willingness, caring, and responsibility. (*Id.*)

Petitioner received his third formal warning on September 7, 2017. (Lorenzen Decl. ¶ 11, Ex. C at 10, 16.) The RDAP treatment team met with him that day to address concerns with low treatment motivation and false compliance with treatment. (*Id.*) A review of his RDAP treatment work revealed that he was not completing RDAP assignments, such as attitude checks, RSAs, and daily participation logs. (*Id.*) He had disregarded the feedback from the RDAP treatment team and had consistently not upheld the expectations of the program. (*Id.*) During the meeting, Petitioner expressed the belief that because he was a "completer," i.e., had completed the unit-based component of RDAP and was in transitional services, he did not need to uphold the expectations of the program. (*Id.*) The DAPC attempted to provide him with feedback surrounding his refusal to "audit" treatment sessions and engage in the program as an RDAP Complete residing on the unit, but Petitioner attempted to interrupt her on multiple occasions, continuing to insist that he was "finished with RDAP." (*Id.*) When RDAP Treatment Team members attempted to provide him feedback about his demeanor and the ongoing expectations of RDAP follow-up/transitional drug abuse treatment, Petitioner smirked

6

and stated in a harsh tone, "It's fine. I'll file." (*Id.*) Petitioner was reminded that the Administrative Remedy process was available to him, but that from a treatment perspective, he had not been upholding the concepts of the program regardless of the phase of treatment. (*Id.*) For example, the DAPC attempted to provide feedback about Petitioner's "in-the-moment" disrespectful presentation. (*Id.*) Petitioner scoffed, laughed, and replied in a sarcastic tone, "Sure. O.K." (*Id.*) He then stared at the DAPC and stated, "Are we done?" (*Id.*) Another DTS explained to him that he had not been appropriately demonstrating the concepts of the program. (*Id.*) The RDAP treatment team informed Petitioner that his behavior was most consistent with the orientation phase of treatment and not that of someone who had completed the unit-based portion of RDAP. (*Id.*) At that time, Petitioner suggested that "if" additional treatment was pursued, "Then I'm going to do an Administrative Remedy." (*Id.*) He sat with folded arms, looking out the window. (*Id.*) As the conversation was no longer productive, Petitioner was instructed that the RDAP treatment team would follow-up to discuss his willingness to uphold treatment expectations. (*Id.*)

On September 12, 2017, Petitioner arrived in Psychology Services without a "call-out." (Lorenzen Decl. ¶ 12, Ex. C at 10–11, 13–14.) When queried about his unassigned presence in the department, Petitioner said, "I want to get off the unit," he was a "completer," and was unwilling to uphold the behavioral expectations of the RDAP unit. (*Id.*) Petitioner was informed that after being offered additional treatment, he was a participant rather than a completer. (*Id.*) The DAPC began to explain the process of withdrawing from RDAP, but Petitioner interrupted her. (*Id.*) She then attempted to

7

discuss the inappropriate behavior of interrupting others and ongoing issues with nonassertive communication. (*Id.*) It was explained that Petitioner's behavior was not appropriate for RDAP and that he has had multiple opportunities to alter his behavior. (*Id.*) Petitioner rolled his eyes and began to place blame on the DAPC and RDAP treatment staff for his "perceived behavior." (*Id.*) Throughout this interaction, Petitioner was disrespectful, demanding, and condescending. (*Id.*) According to the DAPC, this was not demonstrating behavior consistent with mastery of RDAP concepts. (*Id.*) His inappropriate tone and non-verbal communication displayed a lack of humility, open-mindedness, objectivity, and caring. (*Id.*) Petitioner was struggling with entitlement and mollification. (*Id.*) In addition, Petitioner was unable to utilize RDAP concepts when engaged in conversation surrounding his treatment. (*Id.*) Petitioner was informed that his behavior was not consistent with positive RDAP behavior and that he would be seen by the RDAP treatment team. (*Id.*)

   During the meeting with the RDAP treatment team later that day, Petitioner was again unreceptive to feedback regarding his recent inappropriate behavior and displayed poor non-verbal communication, including slouching, folding his arms, and eye-rolling. (Lorenzen Decl. 13, Ex. C at 11–12.) Despite being offered multiple treatment interventions, such as three formal warnings, attitude checks, responsibility checks, progress review updates to his treatment plan, additional treatment, presentations, and counseling, the DAPC determined Petitioner had failed to demonstrate mastery of the RDAP concepts. (*Id.*) Upon consultation with the RDAP treatment team, it was determined that he was to be expelled from the program. (*Id.*) When Petitioner was

informed of the decision, he made a loud, audible sigh of disgust and in a sarcastic tone stated, "Awesome." (*Id.*)

## II. Analysis

### A. Habeas Review

"The writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Section 2241 is the appropriate vehicle when, as here, a federal petitioner "challenges the execution of a sentence or the length or duration of his confinement." *Dozier v. United States*, Case No. 14-cv-4248 (JNE/HB), 2015 WL 9805752, at *2 (D. Minn. Nov. 30, 2015); *see also Correll v. United States*, No. CIV 14-4158, 2015 WL 1478024, at *3 (D.S.D. Mar. 31, 2015) (explaining that a prisoner's challenge to denial of RDAP participation is properly brought under § 2241 because he "challenges the manner in which his sentence is being carried out").

Petitioner asks the Court to order the Respondent to "restore Petitioner's [RDAP] status to RDAP complete and submit their 18 U.S.C. § 3621(e) recommendation for one year off his sentence to Petitioners' sentencing court" and also to "decrease Petitioner's supervised release date by one year." (Habeas Pet. 3.) The Government argues that the Petition should be dismissed for lack of subject-matter jurisdiction because the BOP's discretionary decision regarding Petitioner's expulsion from RDAP and ineligibility for early release are exempt from judicial review. (Doc. No. 8, Gov't's Mem. 9–12.) In the alternative, the Government argues that Petitioner was properly expelled from RDAP,

9

and he has no constitutional or statutory right to participate in RDAP or to an early release. (*Id.* at 12–17.)

### B.   Subject-Matter Jurisdiction

The Administrative Procedure Act ("APA") provides a cause of action for individuals experiencing a legal harm because of agency action and offers a means for holding agency actions unlawful when they are arbitrary, capricious, or an abuse of discretion. *See* 5 U.S.C. § 706(2)(A). The APA also provides, however, that courts may not review agency action when "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a).

Congress has provided that the "provisions of sections 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter." 18 U.S.C. § 3625. The phrase "this subchapter" refers to 18 U.S.C. §§ 3621–3626. *See Martin v. Gerlinski*, 133 F.3d 1076, 1079 (8th Cir. 1998). Thus, it is "apparent that § 3625 precludes judicial review of agency adjudicative decisions," *id.*, and courts in this district have accordingly held that § 3625 precludes judicial review of the BOP's discretionary decisions under § 3621. *See, e.g.*, *Crawford v. Nicklin*, No. 13-cv-2462 (JRT/SER), 2014 WL 538699, at *7 (D. Minn. Feb. 11, 2014) ("Courts in this District have also found § 3625 precludes judicial review of BOP discretionary decisions under § 3621."); *Davis v. English*, No. 12-cv-1483 (JNE/LIB), 2013 WL 1149526, at *6 (D. Minn. Feb. 27, 2013); *Rios v. Fisher*, No. 10-cv-4020 (PJS/TNL), 2012 WL 2814338, at *3 (D. Minn. June 19, 2012).

As the Ninth Circuit explained in a case involving expulsion from RDAP, a prisoner's claim "that he was wrongfully expelled from RDAP, as well as his request for reinstatement into RDAP and for a twelve-month reduction in his sentence, are matters properly left to the BOP's discretion." *Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2011). This is because "federal courts lack jurisdiction to review the BOP's individualized RDAP determinations made pursuant to 18 U.S.C. § 3621." *Reeb*, 636 F.3d at 1228. And "[a]lthough judicial review remains available for allegations that BOP action is contrary to established federal law, violates the United States Constitution, or exceeds its statutory authority, Reeb's habeas petition alleges only that the BOP erred in his particular case." *Id.* Similar to the claim in *Reeb*, Petitioner "challenges the BOP's decision to expel him from RDAP" and asserts "that the BOP erred in his particular case." *Id.* Therefore, the Court lacks jurisdiction to review Petitioner's expulsion from RDAP.

### C. Petitioner Does Not Have a Statutory or Constitutional Right to Participate in RDAP or to an Early Release

Even if the Court had jurisdiction to review Petitioner's expulsion, the petition should still be denied on the merits because Petitioner does not have a statutory or constitutional right to participate in RDAP.

Congress, as noted above, enacted an incentive provision granting the BOP discretion to reduce an inmate's sentence upon successful completion of the RDAP. *See* 18 U.S.C. § 3621(e)(2)(B) ("The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program *may* be reduced by

11

the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.") (emphasis added). The BOP has promulgated regulations, 28 C.F.R. §§ 550.50–550.60, and issued program statements to help implement § 3621(e). Program Statement 5330.11, *Psychology Treatment Programs*, provides operational and procedural guidelines for the delivery of substance abuse treatment services to inmates. (*See* Lorenzen Decl. Ex. A.) According to this guidance, inmates may be removed from RDAP because of disruptive behavior related to the program or unsatisfactory progress in treatment. (*Id.* at 33.) Petitioner was expelled due to repetitive behavioral concerns and an unwillingness to take on the responsibilities of the community, demonstrate positive behavior in his daily interactions, and appropriately give or receive feedback from others. (*See* Lorenzen Decl. ¶¶ 9–13.)

Petitioner argues, as noted above, that BOP staff breached the RDAP contract by expelling him. (*See* Habeas Pet. 4–11; Doc. No. 1-1 at 5–7, *Agreement to Participate in a Bureau of Prisons Residential Drug Abuse Treatment Program*.) Courts have held, however, that this Agreement does not create a contractual relationship. *See Via v. Lyn*, No. 2:10CV101, 2011 WL 573389, at *9 (N.D. W. Va. Jan. 24, 2011) (noting that the Agreement requires the inmate to abide by the expectations, rules, and regulations of RDAP but does not obligate the BOP to keep an inmate in RDAP once accepted). Therefore, Petitioner is not entitled to relief on the basis of his breach of contract claim.

The petition could also be construed as raising a procedural due process claim. However, the statute governing RDAP early release confers discretion on the BOP because § 3621(e)(2)(B) uses the discretionary term "may" when it provides that an

inmate's sentence "may be reduced" by the BOP. This discretion precludes the creation of a liberty interest in early release and forecloses any due process challenge. *See Giannini v. Fed. Bureau of Prisons*, 405 F. App'x 96, 97 (8th Cir. 2010) ("[N]either the Due Process Clause nor 18 U.S.C. § 3621(e)(2)(B) creates a liberty interest in receiving a sentence reduction upon completion of a Bureau of Prisons residential drug abuse program."); *Reeb*, 636 F.3d at 1228 n.4 ("Reeb also cannot prevail on his due process claim because inmates do not have a protected liberty interest in either RDAP participation or in the associated discretionary early release benefit."). Therefore, Petitioner's action can be dismissed on the merits.[1]

### III. Recommendation

For the reasons set forth above, and based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Petitioner's Petition for a writ of habeas corpus (Doc. No. 1) be **DENIED**; and

2. This action be **DISMISSED WITH PREJUDICE**.


Date: September 6, 2018.          *s/ Becky R. Thorson*_____
                                  BECKY R. THORSON
                                  United States Magistrate Judge

---

[1] Petitioner also argues that he was expelled in retaliation for pursuing an administrative grievance, in violation of the First Amendment. (Habeas Pet. 12–15.) Petitioner filed his grievance on September 20, 2017, eight days *after* he was expelled from RDAP. (Doc. No. 1-1 at 30.) Therefore, Petitioner cannot establish that his expulsion was motivated by Plaintiff's exercise of protected activity. *See Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013).

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report within **fourteen days**. A party may respond to those objections within **fourteen days** after service thereof. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).